**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF TEXAS**
**SAN ANTONIO DIVISION**

| | |
|---|---|
| GARY PEREZ AND MATILDE TORRES, | |
| *Plaintiffs*, | |
| v. | Civil Action No. 23-cv-00977-FB |
| CITY OF SAN ANTONIO, | |
| *Defendant*. | |

**JOINT MOTION FOR STATUS CONFERENCE AND UPDATE**

On December 12, 2025, a divided panel of the United States Court of Appeals for the Fifth Circuit affirmed this Court's October 11, 2023 Order on Plaintiffs Gary Perez's and Matilde Torres's (collectively, "Plaintiffs") Motion for Preliminary Injunction. The Fifth Circuit denied rehearing on February 27, 2026, and its mandate issued on March 6, 2026. *See* FED. R. APP. P. 41(b). Proceedings in this Court are now set to resume.

Given the complex appellate history of the case and the passage of time since the Parties' first Rule 26(f) conference, Plaintiffs requested that the City engage in a Supplemental Rule 26(f) conference. The City responded by suggesting it was premature to hold such a conference pending a Status Conference with the Court. Counsel for the Parties met to discuss these issues on April 14, 2026, and exchanged additional email communications on these issues. While the parties have not been able to agree on all issues, they agree to jointly seek a status conference with the Court to provide direction on next steps in the trial Court. To aid this process, the parties provide their respective views on this case's background and potential paths forward below.

I.    **Nature of the Case**

This is a religious liberties case. Plaintiffs are members of the Lipan Apache Native American Church. They believe that the presence of certain trees and cormorants at a sacred riverbend within Brackenridge Park (the "Park") are essential to their worship. Defendant intends to make repairs and improvements to the Park that include removal of certain trees, among them being the trees Plaintiffs seek to preserve. The City's position is that the project requires it to deter migratory waterfowl, including cormorants, from nesting in those trees, because federal law prohibits the City from removing a tree while it contains such a nest. Plaintiffs initiated this action in August 2023 to preserve the components of the Park necessary to their religious worship.

On August 10, 2023, Plaintiffs filed their Complaint for Declaratory and Injunctive Relief ("Complaint"), asserting claims under: (i) the Free Exercise Clause of the First Amendment to the United States Constitution, (ii) the federal Religious Land Use and Institutionalized Persons Act ("RLUIPA"), (iii) Article I, Section 6 of the Texas Constitution, (iv) Article I, Section 6-a of the Texas Constitution, and (v) the Texas Religious Freedom Restoration Act ("TRFRA").[1] The City filed its Original Answer on September 1, 2023, setting out the City's defenses and generally asserting, among other things, that a) Brackenridge Park is owned by the City, which is responsible to the public for its upkeep, safety, and public health; b) to the extent Plaintiffs' access to Brackenridge Park was temporarily restricted, those interests were outweighed by compelling state interests in preserving the area from further decay and erosion, in protecting the health, safety, and welfare of park visitors, and in improving public access to the Park; c) the 2017 Bond

---

[1] Plaintiffs plan to amend their Complaint to omit their RLUIPA claim and add additional pleading on damages.

Project and Wildlife Management Plan involve legislative decisions that were and are substantially and directly related to the legitimate and compelling governmental interest of promoting public safety.

In September 2023, after an expedited discovery period, the Court held a four-day hearing on Plaintiffs' Motion for Temporary Restraining Order and Preliminary Injunction ("Motion"). *See* Dkt. 5. On October 11, 2023, the Court granted Plaintiffs' Motion in part, ordering the City to give the plaintiffs access for certain religious ceremonies, and otherwise denied it. *See* Dkt. 52. Plaintiffs appealed the denial on October 16, 2023. *See* Dkt. 53. Defendant filed a cross appeal that was later dismissed on Defendant's motion, which acknowledged that Defendant was no longer pursuing the issue of access granted by this Court's order. *See* Dkt. 61; Fifth Circuit Dkt. 146, 163.

Although this Court denied Plaintiffs' Emergency Motion for Injunction Pending Appeal [Dkt. 59], proceedings in this Court were effectively halted during the pendency of Plaintiffs' appeal. *See* Dkt. 135.

On December 12, 2025, the Fifth Circuit affirmed this Court's denial of the requested Preliminary Injunction; on February 27, 2026, a divided Fifth Circuit denied Plaintiffs' motion for rehearing; and on March 6, 2026, its Mandate issued.

## II.    **Pre-Mandate Discovery**

### A.    *Plaintiffs' Position*

The Parties engaged in discovery at two relevant points prior to the issuance of the mandate: (1) during the expedited-discovery period leading up to the preliminary injunction hearing, and (2) approximately a year after that hearing, during the pendency of the appeal. In both instances, however, the discovery Plaintiffs obtained from Defendant was limited and ultimately

incomplete. While these deficiencies were excused at the time given the exigencies of the case, both the Parties and this Court recognized that Plaintiffs would be entitled to complete discovery in preparation for a trial on the merits. *See* Dkt. 25 ("Plaintiffs certainly will be entitled to complete discovery for trial on the merits."); Dkt. 113 ("The City does not oppose additional, appropriate discovery the Court sees as necessary under the circumstances and given the history of the case."). As the Parties are now at that stage, Plaintiffs seek the full discovery to which they are entitled.

B.      *The City's Position*

The posture of this case has changed considerably since the Preliminary Injunction hearing. The City has consistently said that it does not oppose additional appropriate discovery the Court sees as necessary and under the circumstances and history of the case. However, additional discovery will not improve Plaintiffs' likelihood of success on the merits in light of the decisions by the Fifth Circuit and Texas Supreme Court, as well as the authorities and reasoning by this Court in denying the Motion for Injunction Pending Appeal [Dkt. 59].

1.      Expedited-Discovery Period

A.      *Plaintiffs' Position*

The expedited-discovery period began on August 22, 2023, and ended less than a month later on September 18, 2023. *See* Dkt. 17. During that time, Plaintiffs served Defendant with written discovery in the form of interrogatories, requests for production, and requests for admission. Defendant responded to those discovery requests on August 31, 2023, and, by September 28, 2023, it had produced approximately 225 documents. Those documents primarily consisted of reports, plans, and designs pertaining to the project, PowerPoint presentations, and photographs of the Park.

4

Notably missing from the City's production, however, were *any* email communications or custodial files belonging to its employees or agents—including from individuals that Defendant identified in its initial disclosures as likely to have discoverable information or from individuals that Defendant called as witnesses at the preliminary injunction hearing—that Plaintiffs had specifically requested. Accordingly, on September 9, 2023, Plaintiffs moved to compel Defendant "to collect, search, and produce e-mail and other documents from custodial sources." Dkt. 20. The Court ultimately denied the motion, but noted that "Plaintiffs certainly will be entitled to complete discovery for trial on the merits." Dkt. 25.

Aside from written discovery, the Parties conducted depositions of the following eight individuals during the expedited discovery period: (i) David Vaughn, (ii) Jamaal Moreno, (iii) Ross Hosea, (iv) Bill Pennell, (v) Shawn Franke, (vi) Homer Garcia, (vii) Shanon Miller, and (viii) Jessica Alderson. Given the compressed schedule at the time, these depositions were taken without the benefit of relevant emails, custodial files, and other important information within the City's possession, which necessarily limited the scope of Plaintiffs' questioning. And most of these depositions lasted between three and four hours, well below the seven-hour limit permitted by the federal rules.

### B.    *Defendant's Position*

The parties engaged in extensive discovery—albeit expedited—in connection with the Court's four-day preliminary injunction hearing held in September 2023. In the leadup to that hearing, the parties took eight (8) depositions over a period of more than 25 hours. Plaintiffs took seven (7) depositions from the following witnesses and for the length of time specified:

(a) Ross Hosea, the City Forester (02:52 hours);

(b) Jamaal Moreno, the City's Project Manager and Landscape Architect (04:23 hours);

(c) Homer Garcia, III, Director of the City's Parks and Recreation Department (03:57 hours);

(d) Shawn Franke, the engineer hired by the City to assist with evaluating options for the project (03:37 hours);

(e) Shanon Shea Miller, the City's former Historic Preservation Officer (03:05 hours);

(f) Bill Pennell, Assistant Manager of the City's Parks and Recreation Department (03:41 hours); and

(g) Jessica Alderson, a wildlife biologist with the Texas Parks & Wildlife Department who assisted the City with developing its bird deterrence plan (02:00 hours).

Counsel for the City took one deposition (of David Vaughan, an expert arborist who had plans to be out of state during the week of the hearing).

In addition, during the four-day evidentiary hearing, the Court received into evidence 128 exhibits (approximately 1,852 pages)—some of which had multiple parts, like City's Exhibit No. D-18, which alone consisted of 41 photographs. The Court also heard testimony from twelve witnesses. The following chart summarizes the duration of testimony taken from such witnesses in depositions and at the hearing:

| Witness | Deposition | PI Hearing | |
|---|---|---|---|
| | | Plaintiffs' Exam | City's Exam |
| Jessica Alderson | 1:49:22 | 0:16 | 0:20 |
| Sazzad bin-Shafique | No depo | 1:01 | 0:41 |
| Shawn Franke | 3:27:00 | 0:30 | 0:32 |
| Homer Garcia III | 3:51:00 | 0:23 | 0:30 |
| Ross Hosea | 2:36:00 | 0:21 | 1:02 |
| Shanon Shea Miller | 2:54:00 | 0:51 | 1:12 |
| Jamaal Moreno | 4:19:09 | 2:30 | 1:06 |
| Bill Pennell | 3:41:00 | 0:56 | 0:56 |
| Micah Pace | No depo | No timestamps | No timestamps |
| Gary Perez | No depo | No timestamps | No timestamps |

| Matilde Torres | No depo | No timestamps | No timestamps |
| David Vaughan | 2:52:00 | (By depo video) | (By depo video) |

Plaintiffs had every opportunity to ask these witnesses what their "internal emails" and "custodial files" might have contained. The City also responded to extensive written discovery from Plaintiffs in which the City produced 1,775 pages of documents and provided Plaintiffs with yet more information and documents through links on the City's website.

2.      Post-Hearing Discovery

A.      *Plaintiffs' position*

In September 2024, while the preliminary injunction appeal was pending, Plaintiffs served on Defendant a second set of interrogatories, requests for production, and requests for admission. Defendant responded to these requests on November 13, 2024, and produced an additional 74 documents the same day. However, once again missing from this (or any) supplemental production were the emails or custodial files from Defendant's employees that Plaintiffs had specifically requested.

On November 21, 2024, Plaintiffs served third-party subpoenas on the Texas Historical Commission and the Historic and Design Review Commission; the following day, Plaintiffs served Defendant with a Rule 30(b)(6) deposition notice. Defendant moved to quash those subpoenas and the deposition notice. On February 25, 2025, this Court held a status conference to address that motion (and other outstanding matters), during which it indicated that it would permit some limited discovery to proceed.

However, the Parties had different understandings of the scope of the Court's oral ruling, and therefore, they filed a joint motion seeking clarification. *See* Dkt. 134. The Court granted that motion for clarification, withdrew its oral pronouncements from the February 25 hearing, and

returned matters to the status quo "until the Texas Supreme Court and the Fifth Circuit Court of Appeals provide[d] clarity and guidance . . . concerning questions of law which may be dispositive and questions of fact requiring further discovery and litigation before the Court or a jury." Dkt. 135.

B.    *Defendant's Position*

In response to Plaintiffs' discovery requests while their appeal was pending, the City maintained its consistent position that the case's procedural posture, as well as its merits, did not justify the kind of discovery that takes place when Apple sues Samsung. City taxpayers support a team of City employees whose sole job is to conduct discovery searches, but keyword searches that are not narrowly tailored generate a huge number of false positives. This requires the City staff and the undersigned attorneys to spend time and money reviewing thousands of pages of documents for responsiveness and privilege.

After the status conference, the Court decided that no discovery would be allowed "until the Texas Supreme Court and the Fifth Circuit Court of Appeals provide[d] clarity and guidance concerning questions of law which may be dispositive and questions of fact requiring further discovery and litigation before the Court or a jury." Dkt. 135. Those courts have now provided the additional guidance the parties were expecting, and this additional guidance is congruent with this Court's own conclusions and opinions expressed in prior Orders and Opinions.  No additional discovery is necessary for the Court to have everything it needs to decide the City's planned dispositive motion.

## III.    <u>Scope of Post-Mandate Discovery</u>

A.    *Plaintiffs' Position*

Plaintiffs have not yet been afforded an adequate opportunity to conduct discovery to which they are entitled under the Rules to prepare for trial on the merits. Plaintiffs will proceed with merits discovery and will continue their efforts to resolve deficiencies in Defendant's responses to the discovery that has already been served.

As the Court previously ruled, Plaintiffs are entitled to "complete discovery" of all their claims and Defendant's defenses under the Federal and Local Rules of Civil Procedure. *See, e.g.*, Dkt. 25 ("Plaintiffs certainly will be entitled to complete discovery for trial on the merits. . . ."). Plaintiffs intend to exercise this right by propounding additional written discovery and by taking depositions of witnesses with relevant knowledge of the facts and circumstances giving rise to this case. In particular, Plaintiffs anticipate obtaining discovery concerning, among other things:

- Communications and Custodial Files from Defendant's Employees and Agents Relevant to Plaintiffs' Request for Religious Accommodation

- Defendant's Post-Litigation Restructuring of Project Phases

- Defendant's Recent Alterations to Bird Deterrence Measures

- Defendant's Consideration of Engineering Solutions

- Plaintiffs' Claim for Damages for Defendant's Past Denial of Access for Religious Ceremonies

To facilitate Defendant's search for responsive information, Plaintiffs are preparing a list of relevant custodians and search terms. Depending on the documents produced, Plaintiffs may need to conduct supplemental depositions of certain witnesses who were previously deposed without the benefit of relevant custodial files and communications. Plaintiffs may also seek to compel production of information responsive to its earlier discovery requests that Defendant withheld at the time.

In addition to obtaining supplemental discovery from Defendant, Plaintiffs intend to obtain discovery regarding the matters listed above (among others) from third-parties, including contractors and governmental bodies.

B.    *Defendant's Position.*

As pointed out above, this case does not come back before the Court on a blank evidentiary slate. The City contends that the next step in this litigation should be to appear before the Court for a status conference to discuss what remains in controversy following the decisions by the Fifth Circuit Court of Appeals and the Texas Supreme Court. There is no need for additional discovery because Plaintiffs have no legal right to dictate how improvements are made in this City-owned and managed public park. Contrary to the case law cited in this Court's Order Denying Injunction on Appeal, Plaintiffs seek to "exact from the City the benefits of dictating which trees may be removed, the method to be used to construct certain improvements, and what species of birds may not be deterred in the 'Sacred Area'," Dkt. 59, at page 7. They now seek broad and wide-ranging, costly, and time-consuming discovery about, among other things, design, engineering, trees, birds, and the City's efforts to accommodate free exercise claims. This would be nothing more than a fishing expedition for "internal emails" and "custodial files" of numerous City employees, including the Directors of the Parks & Recreation Department, the former Historic Preservation Officer, the City's Forester and Landscape Architect, as well as the City's consultants on the design of the Park Improvement Project.

The City has always taken the position that it will comply with the Court's directions, but given the undeniable facts, law of the case, and procedural history, there is no need for such wide-ranging discovery. As this Court observed in its October 25, 2023 "Order on Plaintiffs' Emergency Motion for Injunction Pending Appeal" [Dkt. 59], "the Free Exercise Clause <u>does not give</u>

[plaintiffs] the right to demand that the City provide him with municipally-owned property as a place of worship" or "conduct its own internal affairs in ways that comport with the religious beliefs of particular citizens."[2]  The City contends that for the reasons explained by the Texas Supreme Court and the Fifth Circuit, Plaintiffs' remaining claims fare no better.

In any event, to the extent additional discovery is ordered, the scope should be limited to fulfill legitimate discovery needs and avoid costs and burdens disproportionate to the needs of the case, and should take into account the discovery already undertaken prior to the Preliminary Injunction hearing and the large amount of testimony and exhibits received in evidence at that hearing and included in the record.

## IV.    Stipulations of Law and Fact

The Parties agree that the Court possesses both personal jurisdiction over the Parties and subject matter jurisdiction over the claims and defenses at issue in this case. The Parties have not yet agreed to any other stipulation of law or fact.

## V.    Specific Limits on Written Discovery and Deposition Discovery

### A.    Initial Disclosures

The Parties have exchanged initial disclosures pursuant to the requirements of Federal Rule of Civil Procedure 26(a)(1).

### B.    Depositions

#### 1.    Plaintiffs' Position

Plaintiffs contend that depositions taken in advance of the preliminary injunction hearing should not be counted against the maximum number of depositions permitted under Federal Rule

---

[2] Dkt. 59.  *Order on Plaintiffs' Emergency Motion for Injunction Pending Appeal, pp. 4 and 7.*

11

of Civil Procedure 30(a)(2)(A)(i). Without access to relevant documents that Defendant withheld and was not required to produce for the preliminary-injunction discovery phase, Plaintiffs were unable to adequately prepare for or conduct those depositions in a manner that would allow them to fully develop the factual record necessary for trial. Plaintiffs otherwise contend that depositions should be taken pursuant to Federal Rule of Civil Procedure 30 and Local Rule CV-30.

      2.      Defendant's Position

The City does not agree that Plaintiffs were unable to adequately prepare for and conduct the prior depositions, and, for the reasons stated above and elsewhere in this Report, does not agree that any additional depositions are needed.

C.    *Interrogatories*

      1.      Plaintiffs' Position

Plaintiffs contend that the Parties should serve interrogatories pursuant to Federal Rule of Civil Procedure 33 and Local Rule CV-33, such that each party may serve no more than 25 interrogatories, exclusive of those propounded during the expedited discovery period.

      2.      Defendant's Position

The City contends that additional interrogatories are unnecessary. In any event, the interrogatories propounded by Plaintiffs during the expedited discovery period should count toward the 25-interrogatory limit under Rule 33, and any request to exceed that number must be sought by a motion and the Parties' required pre-filing conference regarding same. Further, most of Plaintiffs' written discovery requests relate to their contention that they should be allowed to dictate the engineering and other solutions for making necessary repairs to the riverbank walls in City-owned and -managed Brackenridge Park. This is another basis for the City's request for a status conference with the Court to discuss the needs, expense, relevance, and proportionality of

the discovery Plaintiffs want to undertake. In its prior filings, the City has requested the Court's guidance about the timing and scope of additional discovery. Rule 26(b) may not be used "as a license to engage in an unwieldy, burdensome, and speculative fishing expedition." *Murphy v. Deloitte & Touche Grp. Ins. Plan*, 619 F.3d 1151, 1163 (5th Cir. 2010). Discovery should be limited if the Court determines that "the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive" or "the proposed discovery is outside the scope permitted by Rule 26(b)(1)." Fed. R. Civ. P. 26(b)(2)(C)(i).

D.    *Requests for Production of Documents*

1.    Plaintiffs' Position

Plaintiffs propose to serve requests for the production of documents pursuant to Federal Rule of Civil Procedure 34.

2.    Defendant's Position

Defendant contends that given the discovery already completed to date, additional requests for production are unnecessary, for the reasons detailed above.

E.    *Requests for Admission*

The Parties are not in agreement on whether additional requests for admission should be allowed, although the Parties do agree that additional requests for admission can be made for the sole purpose of authenticating documents pursuant to Federal Rule of Civil Procedure 36(a)(1)(B); such requests being excluded from Local Rule CV-36's limitation on the number of requests for admission.

*F.     Expert Reports*

The City does not agree that additional Expert Reports are necessary.  However, to the extent the Court determines that additional Expert Reports are required, the City agrees that expert reports shall comply with Federal Rule of Civil Procedure 26(a)(2)(B).

## VI.    Electronically Stored Information

Subject to any rulings by the Court regarding additional requests for production, the Parties agree that they continue to be bound by the terms of the Stipulated Protocol for Producing Documents and Electronically Stored Information entered by the Court on February 25, 2025. Dkt. 129.

## VII.   Protective Order

The Parties agree that they continue to be bound by the terms of the Confidentiality and Protective Order entered by the Court on February 25, 2025. Dkt. 130.

## VIII.  Privilege Claims

The Parties agree that they continue to be bound by the terms of the Consent Order entered by the Court pursuant to Rule 502 of the Federal Rules of Evidence on February 25, 2025. Dkt. 131.

## IX.    Alternative Dispute Resolution

The Parties have previously attempted private resolution of this matter and are in agreement that further alternative dispute resolution efforts would not be productive at this time.

Dated: April 24, 2026

Respectfully submitted,


/s/ *Mark W. Rasmussen*
_____

Mark W. Rasmussen
Texas State Bar No. 24086291
Tim Villari
Texas State Bar No. 24125870
JONES DAY
2727 North Harwood Street
Dallas, TX  75201.1515
Telephone:  +1.214.220.3939
E-mail: mrasmussen@jonesday.com
E-mail: tvillari@jonesday.com

John Greil
Texas State Bar No. 24110856
Steven T. Collis
Texas State Bar No. 24122632
Law & Religion Clinic
University of Texas School of Law
727 East Dean Keeton St.
Austin, TX  78705
Telephone:  +1.512.471.5151
E-mail: john.greil@law.utexas.edu
E-mail: steve.collis@law.utexas.edu

ATTORNEYS FOR PLAINTIFFS



By:    */s/ Fred R. Jones*
Fred R. Jones
State Bar No. 10886700
Email: fjones@langleybanack.com
Natalie F. Wilson
State Bar No. 24076779
Email: nwilson@langleybanack.com
Sara Murray
State Bar No. 14729400
Email: smurray@langleybanack.com
Laura Flores Macom

15

State Bar No. 24002512
Email: lmacom@langleybanack.com
Lee Warren
State Bar No. 24099453
Email: lwarren@langleybanack..com

-and-

CITY OF SAN ANTONIO
Deborah Klein
Deputy City Attorney
State Bar No. 11556750
Email: Deborah.Klein@sanantonio.gov
International Center
203 South St. Mary's Street, 2nd Floor
San Antonio, Texas 78205
(210) 207-8949
(210) 207-4004 – Fax

ATTORNEYS FOR DEFENDANT
CITY OF SAN ANTONIO

## CERTIFICATE OF SERVICE

I hereby certify that on April 24, 2026, I electronically filed the foregoing document with the Clerk of the United States District Court for the Western District of Texas using the CM/ECF system, which will send notification of such filing to all counsel of record.

/s/ Timothy M. Villari
Attorney for Plaintiff

16